Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom, Of Counsel (#17244)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

## CENTRAL DIVISION

| | |
|---|---|
| CODY BRAITHWAITE,<br><br>Plaintiff,<br><br>vs.<br><br>SALT LAKE COUNTY, UNITED STATES MARSHALS SERVICE, DOE U.S. MARSHALS 1-50, and DOE OFFICERS/AGENTS 1-50, in their individual and official capacities,<br><br>Defendants. | **COMPLAINT**<br>**& Jury Demand**<br><br><br>Civil No. _____<br><br><br>Judge _____ |

Plaintiff, by and through his undersigned counsel of record, hereby complain against Defendants, and assert the following allegations in their totality and in the alternative:

## PRELIMINARY STATEMENT

The following allegations are based upon counsels' understanding of information presently available. This is a civil rights action in which Plaintiff seeks relief

for Defendants' violations of the rights of Plaintiff Cody Braithwaite. Cody Braithwaite brings this action under *42 U.S.C. § 1983* and the Utah Constitution against Defendants Salt Lake County, the United States Marshals Service, and Doe U.S. Marshals and Officers/Agents 1-50 for their deliberate indifference and outrageous conduct in denying him necessary medical treatment for a severe wrist injury while he was incarcerated at the Salt Lake County Jail. This egregious violation of Plaintiff's constitutional rights resulted in the permanent disability of his dominant right hand, causing him lifelong pain, suffering, and loss of function.

Defendants' actions, or lack thereof, constitute a shocking and unconscionable disregard for Plaintiff's serious medical needs, violating his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 7 and 9 of the Utah Constitution. For over seven months, Defendants ignored Plaintiff's repeated agonizing pleas for surgery, despite clear medical directives and diagnoses, allowing his wrist to heal improperly and ultimately requiring a permanent fusion that has left him with only 10 degrees of motion in his wrist.

The deliberate indifference displayed by Defendants is not only a violation of constitutional protections but also an affront to basic human decency. Plaintiff seeks compensatory and punitive damages, as well as any other available remedy, to hold Defendants accountable for their outrageous conduct and to prevent such egregious violations from happening to others.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to *28 U.S.C. § 1331* (federal question jurisdiction) because Plaintiff's claims arise under *42 U.S.C. § 1983* and the United States Constitution. This Court also has supplemental jurisdiction over Plaintiff's state law claims under *28 U.S.C. § 1367* because they arise from the same nucleus of operative facts as the federal claims.

Venue is proper in this Court under *28 U.S.C. § 1391(b)* because the events giving rise to Plaintiff's claims occurred in Salt Lake County, Utah, within the Central Division of the District of Utah, and Defendants are subject to personal jurisdiction in this district.

## PARTIES

1. Plaintiff **Cody Braithwaite ("Cody")** is a resident of Bountiful, Davis County, Utah. At all times relevant to this complaint, Cody was a pretrial detainee in the custody of the Salt Lake County Jail, under the supervision of the United States Marshals Service.

2. Defendant **Salt Lake County** is a political subdivision of the State of Utah. At all times relevant herein, Salt Lake County maintained and operated the Salt Lake County Jail (SLCJ), where Cody was detained.

3. Defendant **United States Marshals Service** is a federal agency responsible for the custody and transportation of federal pretrial detainees, including Plaintiff, during his detention at SLCJ.

3

4.     Defendants **Doe U.S. Marshals 1-50** are individual marshals employed by the United States Marshals Service who were responsible for Plaintiff's custody and care, including ensuring he received necessary medical treatment. These are the individuals not yet known who made deliberately indifferent decisions governing Cody's care while incarcerated. Their identities are currently unknown to Cody but can be determined through discovery and are believed to be subject to this court's jurisdiction.

5.     Defendants **Doe Officers/Agents 1-50** are individual officers, agents, or employees of Salt Lake County and/or the United States Marshals Service who were involved in Plaintiff's detention and care, or lack thereof, at SLCJ. Their identities are currently unknown to Cody but can be determined through discovery. These are the individuals not yet known who made deliberately indifferent decisions governing Cody's care while incarcerated. Their identities are currently unknown to Cody but can be determined through discovery and are believed to be subject to this court's jurisdiction.

## FACTS

6.     On December 8, 2023, Plaintiff Cody Braithwaite was a 36-year-old man.

7.     Cody was involved in a motorcycle accident on December 8, 2023, that resulted in a severe fracture and dislocation of his right distal radius.

8.     Cody's injuries were sustained to his dominant hand.

9. Cody sought immediate medical attention at a Salt Lake Hospital Emergency Room, where he was diagnosed with a comminuted intraarticular distal radius fracture requiring surgical intervention.

10. Due to swelling, the surgery was rescheduled.

11. On December 15, 2023, before Cody could undergo the necessary surgery, he was arrested by federal marshals on an existing indictment and taken to the Salt Lake County Jail (SLCJ) for detention.

12. Upon intake at SLCJ, the jail nurse observed Plaintiff's severe wrist injury and refused to admit him without medical clearance.

13. Cody was sent to the hospital with the marshals, where additional X-rays confirmed the need for urgent surgery to set his dislocated wrist.

14. Instead of receiving surgery, Cody was returned to SLCJ with explicit discharge instructions mandating surgery as soon as possible.

15. Despite these clear medical directives, Defendants Salt Lake County, the United States Marshals Service, and Doe Marshals and Officers/Agents repeatedly denied Cody access to the necessary surgery.

16. Over the next seven months, jail medical personnel made multiple requests for Cody to receive surgical treatment, but the Marshals Service and other Defendants consciously disregarded these requests, exhibiting deliberate indifference to Plaintiff's serious medical condition.

17. Cody grieved the denials of care to the fullest extent possible, begging for help and relief while enduring excruciating pain and watching his wrist deteriorate.

18. Cody's wrist was stuck in a wrap while dislocated.

19. His pleas were ignored, forcing him to file a pro se complaint against the Marshals Service in June 2024 to seek redress for the ongoing violation of his rights.

20. Medical records from Comprehensive Orthopedics and Sports Medicine, dated January 29, 2024, confirm the severity of Plaintiff's condition.

21. Dr. Benjamin George Williams noted a "comminuted intraarticular distal radius fracture" with "very minimal signs of healing," and the carpus was "subluxed volarly," with the lunate facet piece healed in a malunion.

22. Dr. Williams warned that the joint might not be salvageable and could require a radial scapholunate fusion, a drastic measure that would permanently limit Plaintiff's wrist mobility.

23. Despite this dire prognosis and the clear need for immediate intervention, Defendants took no action.

24. Cody's wrist remained dislocated and untreated for over seven months, from December 15, 2023, to July 19, 2024, when he finally underwent surgery.

25. By that time, the damage was irreparable.

26. On July 19, 2024, Dr. Williams performed a right proximal radial carpal fusion, noting that it was "quite challenging to get good reduction given how everything had healed."

27.     The surgery involved a medartis volar fusion plate and resulted in permanent fusion of the wrist, leaving Cody with only 10 degrees of palmar flexion and 0 degrees of dorsiflexion, as noted in a follow-up visit on September 5, 2024.

28.     The delay in treatment caused Cody to lose 80% of the function in his dominant right hand, rendering him permanently disabled.

29.     Cody now faces a lifetime of limited mobility, chronic pain, and the inability to perform basic tasks that require the use of his right hand.

30.     This catastrophic outcome was entirely preventable had Defendants adhered to their constitutional and statutory duties to provide timely medical care.

31.     Defendants' conduct is nothing short of outrageous and conscience-shocking.

32.     For over seven months, they ignored Plaintiff's cries for help, disregarded medical professionals' recommendations, and allowed his condition to deteriorate to the point of permanent disability.

33.     This deliberate indifference to a known, serious medical need constitutes a flagrant violation of Plaintiff's constitutional rights and demands accountability.

## CAUSES OF ACTION

34.     The headings stated under each individual cause of action are for general descriptive purposes only and are not intended to limit Plaintiffs' claims for relief.

Plaintiffs reserve the right to assert any available legal theory or claim for relief applicable to the facts set forth in the Complaint or an Amended Complaint pursuant to F.R.Civ.P. 8.

35. The causes of action asserted herein are asserted individually and/or in the alternative.

## FIRST CAUSE OF ACTION

### ~ *Unnecessary Rigor* ~

*Deprivation of Federal Constitutional Rights – 42 U.S.C. § 1983 and Utah Constitution Article I, Section 9 Against All Defendants*

36. Cody incorporates by reference all preceding paragraphs as if fully set forth herein.

37. Article I, Section 9 of the Utah Constitution provides that "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." The Utah Supreme Court has interpreted this provision to protect prisoners from conditions of confinement that "demand more of the prisoner than society is entitled to require," including being "unnecessarily exposed to an increased risk of serious harm." *Dexter v. Bosko*, 2008 UT 29, ¶ 17, 184 P.3d 592.

38. Defendants violated Cody's rights under Article I, Section 9 by denying him necessary surgical treatment for his severe wrist injury, despite knowing that such denial would expose him to a serious risk of permanent harm. This conduct constitutes unnecessary rigor, as it demanded more of Cody than society is entitled to require, leaving

him in agony for over seven months and resulting in the permanent loss of function in his dominant hand.

39     The Utah Supreme Court has held that Article I, Section 9 is a self-executing provision that prohibits specific evils without the need for implementing legislation. *State v. Lafferty*, 2001 UT 19, ¶ 73, 20 P.3d 342, 365. To recover damages for such a violation, Cody must show a "flagrant violation" of his rights, that existing remedies do not redress his injuries, and that equitable relief is inadequate. *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 48, 250 P.3d 465.

40.     Defendants' actions meet this standard. Their deliberate refusal to provide Cody with surgery, despite multiple requests from jail medical personnel and Plaintiff's own grievances, was a flagrant violation of his constitutional rights. No existing remedies can fully redress the permanent loss of function in Cody's hand, and equitable relief, such as an injunction, is wholly inadequate to address the irreparable harm he has suffered.

41.     Furthermore, the Utah Governmental Immunity Act (UGIA), Utah Code Ann. § 63G-7-101 et seq., does not shield Defendants from liability for this state constitutional claim. The UGIA waives immunity for injuries caused by a governmental entity's failure to act where a duty exists, particularly when the conduct involves a flagrant violation of constitutional rights. See *Tindley v. Salt Lake City Sch. Dist.*, 2005 UT 30, ¶ 20, 116 P.3d 295 (holding that immunity does not apply when a governmental actor's

conduct rises to the level of a constitutional violation). Here, Defendants' deliberate indifference to Cody's serious medical needs constitutes such a flagrant violation, stripping away any immunity protection under the UGIA.

42.     As a direct and proximate result of Defendants' violation of Article I, Section 9, Cody has suffered permanent disability, severe pain, and emotional distress, entitling him to compensatory and punitive damages.

## SECOND CAUSE OF ACTION

### ~ *Outrageous Conduct* ~

*Deprivation of Federal Constitutional Rights – 42 U.S.C. § 1983 and the Fourteenth Amendment Substantive Due Process*
*Against all Defendants*

43.     Cody incorporates by reference all preceding paragraphs as if fully set forth herein.

44.     Defendants' deliberate indifference to Cody's serious medical needs constitutes outrageous and conscience-shocking conduct in violation of his substantive due process rights under the Fourteenth Amendment, cognizable under *42 U.S.C. § 1983*.

45.     The Tenth Circuit has held that government conduct is conscience-shocking when it "demonstrate[s] a degree of outrageousness and magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Such conduct includes the arbitrary abuse of authority or the use of authority

as "an instrument of oppression." *Williams v. Barney*, 519 F.3d 1216, 1220 (10th Cir. 2008).

46. Defendants' actions in ignoring Cody's obvious need for surgery for over seven months, despite clear medical directives and his repeated pleas, demonstrate a degree of outrageousness that shocks the conscience.

47. Defendants knew or should have known that their failure to act would result in permanent harm, yet they did nothing, allowing Cody's wrist to heal improperly and necessitating a permanent fusion that has left him permanently disabled.

48. This conduct constitutes a substantive due process violation under the Fourteenth Amendment, as it reflects a deliberate and oppressive disregard for Cody's well-being. Moreover, qualified immunity does not protect the individual Defendants because the right to timely medical care for a serious medical need was clearly established at the time of the violation. See *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (establishing that deliberate indifference to serious medical needs violates the Constitution); see also *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (denying qualified immunity where the constitutional right was clearly established and the conduct was objectively unreasonable). Defendants' seven-month delay in providing surgery, despite explicit medical directives, was objectively unreasonable and violated a right that any competent official would have known, thus defeating any claim to qualified immunity.

49.    As a result, Cody has suffered permanent disability, severe pain, and emotional distress, entitling him to compensatory and punitive damages, as well as attorney's fees under *42 U.S.C. § 1988*.

## THIRD CAUSE OF ACTION

### ~ *Faliure to Intervene* ~

*Cognizable Under 42 U.S.C. §1983*
*Against all Defendants*

50.    Cody incorporates by reference all preceding paragraphs as if fully set forth herein.

51.    Defendants had a duty to intervene to protect Cody from the United States Marshals Service's deliberate indifference to his serious medical needs. The Tenth Circuit has held that an officer who fails to take reasonable steps to protect a victim from another officer's unconstitutional conduct can be held liable for their nonfeasance under *42 U.S.C. § 1983*. *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011).

52.    Defendants Salt Lake County, Doe Officers/Agents, and other individual defendants were present and aware of the Marshals Service's refusal to provide Cody with necessary medical treatment. Despite this knowledge, they failed to take any reasonable steps to intervene and ensure Cody received the surgery he desperately needed, thereby violating their duty to protect him from unconstitutional harm.

53.    Qualified immunity does not apply here, as the duty to intervene in the face of a known constitutional violation was clearly established. See *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) (holding that officers can be liable for failing to intervene when they observe a constitutional violation and have a realistic opportunity to prevent it). Defendants had ample opportunity over seven months to act, yet chose inaction, rendering their conduct objectively unreasonable under clearly established law.

54.    As a direct and proximate result of Defendants' failure to intervene, Cody suffered permanent disability, severe pain, and emotional distress, entitling him to compensatory and punitive damages, as well as attorney's fees under *42 U.S.C. § 1988*.

### FOURTH CAUSE OF ACTION

### *~ Deliberate Indifference to Serious Medical Needs ~*

*Violations of the Eight and Fourteenth Amendment
to the Constitution of the United States
Cognizable Under 42 U.S.C. §1983
Against All Defendants*

55.    Cody incorporates by reference all preceding paragraphs as if fully set forth herein.

56.    As a pretrial detainee, Plaintiff's right to adequate medical care is protected by the Fourteenth Amendment's Due Process Clause, which imposes the same standard as the Eighth Amendment's prohibition on cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Defendants violated this right by acting with deliberate indifference to Plaintiff's serious medical needs.

57.     The Tenth Circuit has established that deliberate indifference requires both an objective component—that the medical need is sufficiently serious—and a subjective component—that the defendant knew of and disregarded an excessive risk to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

58.     Cody's comminuted intraarticular distal radius fracture, which required urgent surgical intervention, was a sufficiently serious medical need. Medical records from January 29, 2024, confirm the severity of the injury, noting minimal signs of healing and the risk of permanent malunion if untreated. Defendants were aware of this need through hospital discharge instructions, multiple requests from jail medical personnel, and Cody's own grievances, yet they consciously disregarded the excessive risk to his health by denying him surgery for over seven months.

59.     This deliberate indifference resulted in the permanent fusion of Plaintiff's wrist, leaving him with only 10 degrees of motion and an 80% loss of function in his dominant hand. Cody endured prolonged pain and suffering during his incarceration, despite a clear diagnosis and treatment plan.

60.     Qualified immunity is inapplicable because the right to timely medical treatment for a serious injury was clearly established, and Defendants' prolonged inaction was patently unreasonable. See *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005) (denying qualified immunity where prison officials delayed treatment for a serious medical need, causing permanent harm). The egregious nature of Defendants' conduct—ignoring medical directives for over seven months—forecloses any immunity defense.

14

61.     Cody is entitled to compensatory and punitive damages, as well as attorney's fees under 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

### ~ *Unlawful or Deficient Polices, Procedures and Protocols* ~

*Cognizable Under 42 U.S.C. §1983*
*Against Salt Lake County and United States Marshals Service*

62.     Cody incorporates by reference all preceding paragraphs as if fully set forth herein.

63.     Defendants Salt Lake County and the United States Marshals Service are liable under 42 U.S.C. § 1983 for maintaining policies, customs, or practices that directly caused the violation of Cody's constitutional rights. A governmental entity may be held liable when its policy or custom is the moving force behind a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

64.     Defendants maintained a custom of laxity in supervising and monitoring the health and safety of inmates, as evidenced by their repeated failure to ensure Cody received necessary medical treatment despite clear protocols requiring such care. This custom became a de facto official policy, reflecting deliberate indifference to the rights, health, and safety of detainees like Cody.

65.     Defendants' failure to have adequate policies, or to train and supervise their employees in accordance with such policies, directly resulted in the denial of Cody's medical care, causing him permanent disability, severe pain, and emotional distress.

15

66.    The UGIA does not immunize Salt Lake County from this claim, as it does not apply to federal claims under § 1983, which preempt state immunity laws. *See Felder v. Casey*, 487 U.S. 131, 139 (1988) (holding that state immunity statutes do not bar § 1983 actions in federal court). Furthermore, the UGIA waives immunity for constitutional violations caused by governmental policies, particularly where, as here, the policy reflects deliberate indifference to a detainee's serious medical needs. *See Spackman v. Bd. of Educ.*, 2000 UT 87, ¶ 23, 16 P.3d 533.

67.    Cody is entitled to compensatory and punitive damages, as well as attorney's fees under 42 U.S.C. § 1988.

## SIXTH CAUSE OF ACTION

### ~ *Special Relationship and State-Created Danger* ~

*Cognizable Under 42 U.S.C. §1983*
*Against All Defendants*

68.    Cody incorporates by reference all preceding paragraphs as if fully set forth herein.

69.    Defendants are liable under the special relationship and state-created danger doctrines, which impose a duty on state actors to protect individuals in their custody from foreseeable harm. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989).

16

70.    The Tenth Circuit has recognized that a special relationship exists when the state assumes control over an individual, triggering an affirmative duty to provide protection. *Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir. 1998).

71.    Defendants had actual custody of Cody during his detention at SLCJ, creating a special relationship that obligated them to protect him from foreseeable harm, including the harm caused by denying him necessary medical treatment.

72.    Defendants also created the danger by ignoring Cody's serious medical needs, knowing that such inaction would result in permanent injury.

73.    Defendants' conduct was egregious and outrageous, evidencing extreme carelessness and recklessness in exposing Cody to deliberate indifference.

74.    Qualified immunity does not shield Defendants, as the duty to protect detainees from foreseeable harm under the special relationship doctrine was clearly established. *See Schwartz v. Booker*, 702 F.3d 573, 580 (10th Cir. 2012) (denying immunity where state actors failed to protect an individual in custody from known risks).

75.    Defendants' reckless disregard for Cody's worsening condition over seven months violates this duty in a manner no reasonable official could deem lawful.

76.    As a direct and proximate result, Cody has lost significant use of his right hand, entitling him to compensatory and punitive damages.

## **DAMAGES**

As a direct and proximate result of Defendants' actions and omissions, Cody has suffered severe and permanent injuries, including:

17

1.      Permanent disability and loss of 80% function in his dominant right hand, as confirmed by medical records showing only 10 degrees of palmar flexion and 0 degrees of dorsiflexion post-surgery;

2.      Prolonged pain and suffering during his seven-month wait for treatment;

3.      Emotional distress and mental anguish from the loss of his physical abilities and the knowledge that his condition could have been prevented;

4.      Loss of enjoyment of life and the inability to perform basic tasks requiring the use of his right hand; and

5.      Future medical expenses and rehabilitation costs associated with his permanent disability.

Defendants' conduct was willful, wanton, and reckless, warranting the imposition of punitive damages to punish their outrageous behavior and deter similar conduct in the future.

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

## PRAYER FOR RELIEF

**WHEREFORE** Cody Braithwaite respectfully requests that this Court:

1.      Enter judgment in favor of Cody and against Defendants on all causes of action;

2.      Award Cody compensatory damages in an amount to be determined at trial, but not less than $5,000,000, to compensate for his permanent disability, pain, suffering, emotional distress, and loss of enjoyment of life and future earnings;

3.      Award Cody punitive damages in an amount to be determined at trial to punish Defendants' outrageous and conscience-shocking conduct;

4.      Award Cody his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

5.      Grant such other and further relief as the Court deems just and proper.

DATED this 29th day of August, 2025.

SYKES MCALLISTER LAW OFFICES, PLLC

/s/ C . Peter Sorensen
ROBERT B. SYKES
C. PETER SORENSEN
*Attorneys for Plaintiff*

19